IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

MJ CONNECTIONS, INC.,          §
                               §
             Plaintiff,        §
                               §
v.                             §      Civil Action No.  3:23-CV-1616-D
                               §
PINCUS LAW GROUP, PLLC,        §
                               §
             Defendant.        §

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff MJ Connections, Inc. ("MJC") against defendant Pincus

Law Group, PLLC ("Pincus") for breach of contract, quantum meruit, promissory

estoppel, and declaratory judgment, Pincus moves under Fed. R. Civ. P 12(b)(2) to

dismiss for lack of personal jurisdiction, or, in the alternative, under 28 U.S.C. § 1404(a)

to transfer this case to the Eastern District of New York for consolidation with an earlier

filed action: *Pincus Law Group, PLLC v. Majenica Lynn Springer and MJ Connections,*

*Inc.*, No. 2:23-cv-05528-AMD ("Eastern District Suit").  For the reasons that follow, the

court grants the motion to dismiss for lack of personal jurisdiction and dismisses this

action without prejudice.

I

Plaintiff MJC is a corporation that provides consulting and marketing services to

law firms.  MJC's principal place of business is in Texas.  Defendant Pincus is a New

York-based law firm that provides legal services to mortgage service providers.  Pincus'

principal place of business is New York.  In 2017 MJC and Pincus entered into a Limited

Business Development Agreement (the "Agreement") under which MJC agreed to

provide advice, assistance, and consultation for Pincus' business development needs.

Under the Agreement, MJC would work remotely to provide exclusive marketing for

Pincus in the state of New York and other non-exclusive services in other states.  In

exchange for its services, MJC would receive 10% of the amount billed to the new

referrals sourced by MJC, and Pincus would provide a monthly accounting of referrals to

MJC.  If the Agreement was terminated, Pincus was obligated to continue paying the 10%

fee on any work that was referred to it prior to the termination for three years.  Pincus

gave notice to terminate the Agreement, and, on February 16, 2020, the Agreement was

effectively terminated.  After three years elapsed, MJC contacted Pincus to request a final

accounting and payment of amounts owed under the Agreement, which Pincus refused.

On April 18, 2023 MJC sent a demand letter to Pincus, "seeking a full accounting

for all amounts billed to the Mortgage Services for January 1, 2018, through December

31, 2022" within 10 days.  Compl. App. (ECF No. 1-1) at 27.  The letter also stated that

failure to produce the account would result in MJC's initiating legal proceedings in

Texas, "as required in the parties' Agreement." *Id.* at 28.  Pincus replied on May 26,

2023 and provided an accounting chart that MJC rejected on June 6, 2023.  Together with

the rejection of the chart, MJC also demanded a new settlement offer and stated that, if it

was not received by June 12, 2023, MJC would "have no option other than to file suit and

seek full relief with the Courts." *Id.* at 65.

On June 12, 2023 the parties discussed by telephone MJC's demand for $600,000.[1] The next day, on June 13, 2023, Pincus filed the Eastern District Suit in New York state court against MJC and Majenica Springer ("Springer"),[2] alleging claims for breach of contract, tortious interference with contract, and breach of the covenant of good faith and fair dealing.[3]

On June 14, 2023 Pincus sent an email rejecting MJC's demand, and Pincus advised MJC to contact it to discuss the disputed amounts. On June 16, 2023 MJC—still unaware of the Eastern District Suit—sent a final demand informing Pincus that it had until June 19 to pay $100,000 to MJC, otherwise, MJC would file suit in Texas. When Pincus did not reply on June 19, MJC filed this suit in Texas state court on June 20.

On July 19, 2023 Pincus removed the Texas state case to this court, and on July 20, 2023 MJC and Springer removed the New York state case to the Eastern District.

---

[1]MJC alleges that, on the June 12 call, Pincus stated that it remained interested in negotiating a settlement, and MJC agreed to "postpone the filing of a lawsuit" so that Pincus would have more time to discuss the offer. P. Resp. App. (ECF No. 16) at 22, ¶ 9.

[2]Springer is the principal and owner of MJC.

[3]Spring was not served until June 21, 2023, and MJC was not served until July 6, 2023 due to issues with the process server.

II

The court need only address Pincus' motion to dismiss for lack of personal jurisdiction.

Pincus contends that it does not have sufficient contacts with Texas; the Agreement related to work performed in New York; and that Pincus is a New York-based law firm that has no purposeful contacts with Texas.  Pincus maintains that this court lacks specific jurisdiction over it because Pincus did not purposefully direct any activities to Texas and MJC's claims do not arise from or relate to Pincus' contacts with Texas; Pincus is a New York-based law firm that has never done legal business in Texas and the plain language of the Agreement required performance in New York; this court lacks general jurisdiction because Pincus does not have sufficiently systematic and continuous contacts with Texas; and even if Pincus does have minimum contacts with Texas, the exercise of jurisdiction would not comport with traditional notions of fair play and substantial justice.

In opposition to Pincus' motion, MJC contends that Pincus purposefully availed itself of the privilege of conducting activities in Texas because Pincus is currently registered to do business in Texas; Pincus has a registered agent for service of process in Texas;[4] it regularly enters into agreements with Texas corporations for services to be performed in Texas; it employs agents who live in Texas to solicit business opportunities

---

[4]MJC served Pincus in New York, not in Texas, even though Pincus had a registered agent in Texas at the time.

with corporations in Texas; and it expressly consented to jurisdiction in Texas in written communications while negotiating the Agreement.  MJC maintains that its claims relate to its performance in Texas and Pincus' failure to pay amounts owed for the services rendered; that Pincus has not met its burden of showing that the exercise of jurisdiction would be unfair; and that Pincus cannot meet its burden because it engaged in sufficient contacts with Texas to confer jurisdiction.

Pincus replies that the contacts on which MJC relies are MJC's contacts, not Pincus', and are therefore inapposite to the specific jurisdiction analysis; that there is no relationship between the money MJC seeks to collect and Texas because all of the disputed revenue was generated from work performed outside of Texas; Pincus became a registered business in Texas and employed a Texas resident two years *after* the Agreement was terminated; the choice-of-law provision does not indicate that Pincus voluntarily submitted to personal jurisdiction; there was no forum selection clause; the contacts Pincus does have (infrequent travel to Texas over a period of five years and payments to Texas) are insufficient to establish specific jurisdiction; and that it is not subject to general jurisdiction because fewer than 2% of its employees are in Texas and it generates the majority of its revenue in New York.

## III

The determination whether a federal district court has *in personam* jurisdiction over a nonresident defendant is bipartite.  The court first decides whether the long-arm

statute of the state in which it sits confers personal jurisdiction over the defendant.  If it does, the court then resolves whether the exercise of jurisdiction is consistent with due process under the United States Constitution.  *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999).  Because the Texas long-arm statute extends to the limits of due process, the court need only consider whether exercising jurisdiction over Pincus would be consistent with the Due Process Clause of the Fourteenth Amendment.  *See id.*; *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000).

> The Due Process Clause of the Fourteenth Amendment permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." To comport with due process, the defendant's conduct in connection with the forum state must be such that he "should reasonably anticipate being haled into court" in the forum state.

*Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (footnotes omitted) (first quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); then quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The defendant's contacts with the forum may support either specific or general jurisdiction over the defendant.  *Mink*, 190 F.3d at 336.  "Specific jurisdiction exists when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action.  General jurisdiction exists when a defendant's contacts

with the forum state are unrelated to the cause of action but are 'continuous and systematic.'" *Id.* (citations omitted).

To determine whether exercising jurisdiction would satisfy traditional notions of fair play and substantial justice, the court examines: (1) the defendants' burden, (2) the forum state's interests, (3) the plaintiff's interest in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the states' shared interest in furthering fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 421 (5th Cir. 1993).

"The district court usually resolves the jurisdictional issue without conducting a hearing." *Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993) (footnote omitted).

> When a court rules on a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing, it must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts posed by the affidavits. Therefore, in a no-hearing situation, a plaintiff satisfies his burden by presenting a prima facie case for personal jurisdiction.

*Latshaw*, 167 F.3d at 211 (footnotes omitted).

"This liberal standard, however, does not require the court to credit conclusory allegations, even if they remain uncontradicted." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 2000 WL 35615925, at *2 (N.D. Tex. Sept. 15, 2000) (Fitzwater, J.) (citing *Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 n.16 (5th Cir. 1996)),

*aff'd*, 253 F.3d 865, 869 (5th Cir. 2001) (per curiam) (affirming, *inter alia*, this conclusion). Nor is the court limited to considering the facts pleaded in the complaint. *See Walk Haydel & Assocs. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008). Rather, "the district court may receive any combination of the recognized methods of discovery, including affidavits, interrogatories, and depositions to assist it in the jurisdictional analysis." *Tendeka, Inc. v. Glover*, 2014 WL 978308, at \*3 (S.D. Tex. Mar. 12, 2014) (Rosenthal, J.) (internal quotations omitted).

IV

A

The court first considers whether MJC has made a prima facie showing of general jurisdiction.

MJC contends that Pincus' contacts with Texas are so continuous and systematic that Pincus is essentially "at home" in Texas. *See Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014). MJC points to evidence that Pincus employees traveled to Texas three times for the purpose of doing business in Texas. But as the Fifth Circuit has held, "mere travel, even at regular intervals into a state, does not create general jurisdiction." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 614 (5th Cir. 2008).

MJC also maintains that Pincus has contracts with other Texas businesses, and is registered, has a registered agent, and has one employee in the state of Texas.[5] But to be

---

[5] MJC correctly points out that Pincus is currently registered to do business in Texas, has a registered agent in Texas, and employs one employee in Texas. This occurred two years after the Agreement was terminated. In the Fifth Circuit, the court can analyze contacts

subjected to general jurisdiction, a defendant must have a general business presence in the state. *See Johnston*, 523 F.3d at 612-13; *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999). Merely doing business with Texas businesses or customers does not subject a nonresident to general jurisdiction unless it also has a lasting physical presence in the state. *See Access Telecom, Inc.*, 197 F.3d at 717. Further, registering a business carries "no special weight," and having a "registered agent . . . hardly amounts to the general business presence" needed to sustain a finding of general jurisdiction. *Wenche Siemer v. Learjet Acquisition Corp.*, 966 F.2d 179, 181-83 (5th Cir. 1992) (internal citations omitted).

MJC has failed to make a prima facie showing that Pincus had a physical presence in Texas that is large enough to render it "at home" here. *See Access Telecom, Inc.*, 197 F.3d at 717. Pincus owned no offices or property, paid no taxes, and maintained no bank accounts in Texas. The majority of its revenue was derived outside of Texas, and its one Texas employee represented less than 2% of its workforce. While Pincus may do business with Texans, MJC has not made a prima facie showing that Pincus does a substantial amount of business in Texas. *See id.* The court therefore concludes that MJC has failed to make a prima facie showing that the court can exercise general jurisdiction

---

of the defendant with the forum over a reasonable number of years, up to the date the suit is filed. *See Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 717 (5th Cir. 1999) (stating that "[g]eneral jurisdiction can be assessed by evaluating contacts of the defendant with the forum over a reasonable number of years, up to the date the suit was filed."); *see also Alpine*, 205 F.3d at 218 (examining only contacts during the relevant period for general jurisdiction).

over Pincus.

## B

The court next considers whether MJC has made a prima facie showing of specific jurisdiction.

### 1

MJC relies on the following grounds to make a prima facie showing that the court has specific jurisdiction: (1) Pincus does business in Texas; (2) the Agreement did not require performance in New York; (3) Pincus knew that MJC would perform in Texas; (4) performance in Texas was material to the Agreement; (5) Pincus performed in Texas by sending reports and payments to Texas; (6) Pincus traveled to Texas at least three times to develop business; (7) the Agreement contained a choice-of-law provision selecting Texas; and (8) Pincus employs Texas residents.

### 2

Specific jurisdiction analysis "focuses on the relationship among the defendant, the forum, and the litigation," *Stuart v. Spademan*, 772 F.2d 1185, 1190 (5th Cir. 1985) (footnote omitted) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413 (1984)), and is a "claim-specific inquiry," *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). When analyzing a claim arising from a contract, "only those acts which relate to the formation of the contract and the subsequent breach are relevant." *See Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003). The analysis

"includes 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing.'" *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 489 (5th Cir. 2018) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). "The 'minimum contacts' inquiry is fact intensive and no one element is decisive; rather the touchstone is whether the defendant's conduct shows that it 'reasonably anticipates being haled into court.'" *McFadin*, 587 F.3d at 759 (quoting *Luv n' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 470 (5th Cir. 2006)). Of course, "[a] plaintiff's or third party's unilateral activities cannot establish minimum contacts between the defendant and forum state." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).

3

Given the fact-bound nature of the inquiry, it can be helpful to compare the facts of the present case with those of Fifth Circuit decisions that have either found or declined to find specific jurisdiction. *See, e.g.*, *Lansing Trade Grp., LLC v. 3B Biofuels GmbH & Co., KG*, 612 F.Supp.2d 813, 821-29 (S.D. Tex. 2009) (Rosenthal, J.) (using this mode of analysis when addressing whether court had personal jurisdiction).

The Fifth Circuit "has consistently looked to the place of contractual performance to determine whether the making of a contract with a Texas resident is sufficiently purposeful to satisfy minimum contacts." *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992). Foreseeability that the plaintiff would perform

in the forum state is not enough to establish specific jurisdiction.  *See Moncrief Oil Int'l Inc*, 481 F.3d at 313; *Special Indus., Inc. v. Zamil Grp. Holding Co.*, 578 Fed. Appx. 325, 329-32 (5th Cir. 2014) (per curiam).

In *Moncrief* the Fifth Circuit found no specific jurisdiction where the hub of the defendant's activities was outside of Texas; the plaintiff did not work solely from the forum state; the defendant was not actively engaged in the activities being performed under the contract; and the choice-of-law provision did not select Texas.  *Moncrief*, 481 F.3d at 313. Although the defendant knew that the plaintiff would substantially perform the contract in Texas, the contract did not mention where performance would occur, and the nature of the work indicated that the location of the performance did not matter.  *Id.* While the plaintiff was based in Texas, it was engaged in projects around the world and had offices in other countries.  *Id.*

Similarly, in *Special Industries* the fact that the defendant contracted with the plaintiff based on the knowledge that it would perform its obligations in Texas did not subject it to specific jurisdiction.  *See Special Industries*, 578 Fed. Appx. at 329-30.  The contract was negotiated and executed outside of Texas, the plaintiff did not operate solely in Texas, the agreement did not require any work to be performed in Texas, Texas was not the hub of the parties' activities, and the choice-of-law provision did not specify Texas law.  *Id.* at 331.

In contrast, specific jurisdiction has been found where the defendant took

affirmative action to engage with the plaintiff in the forum state.  *See Miss. Interstate Exp., Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1007 (5th Cir. 1982); *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380-83 (5th Cir. 2003).  For example, in *Mississippi Interstate* the defendant took affirmative action by initiating all of the activity within the state and directing the actions of the plaintiff.  *Miss. Interstate Exp., Inc.*, 681 F.2d at 1009.  The plaintiff only operated within the forum state, and it was "clearly the hub of the parties' activities."  *Id.* at 1010.

Likewise, in *Central Freight* the contract contemplated that the plaintiff would use its Texas location to engage with Texas businesses.  *Central Freight*, 322 F.3d at 382. The plaintiff only engaged in work within the forum state, and the defendant actively engaged with the various activities taking place therein by controlling the pricing and shipping information.  *Id.*  The court relied on the fact that the defendant "specifically and deliberately 'reached out' to a Texas corporation by telephone and mail with the deliberate aim of entering into a long-standing contractual relationship with a Texas corporation."  *Id.* at 382 (citing *Burger King*, 471 U.S. at 479-80).  In so doing, the defendant "knew that it was affiliating itself with an enterprise based primarily in Texas." *Id.*  And although the defendant never performed in Texas, it "took 'purposeful and affirmative action' by entering into the Interline Agreement . . . that had the clearly 'foreseeable' effect of 'causing business activity in the forum state.'"  *Id.* (quoting *Miss. Interstate Exp., Inc.*, 681 F.2d at 1007).

In the present case, contracting with the knowledge that MJC would perform in Texas is not sufficient to establish specific jurisdiction. *See Moncrief Oil Int'l Inc.*, 481 F.3d at 313; *Special Indus.*, 578 Fed. Appx. at 329-30. While Texas may have been an advantageous source of business for Pincus, the Agreement did not require or even contemplate that MJC would perform in Texas. Rather, the Agreement acknowledged that MJC would work remotely, but without specifying a location. Indeed, MJC acknowledges that the substance of the Agreement required that MJC market to "mortgage servicers *across the country . . .* for matters in the State of New York." P. Resp. (ECF No. 16) at 3 (emphasis added).

Significantly, MJC has failed to show that Pincus actively engaged in the various activities taking place in the forum state. MJC was allowed to independently pursue opportunities within the bounds of the exclusivity agreement without Pincus' directing its activities. Although MJC maintains that the mortgage market is primarily based in Texas, Texas was not the hub of the parties' activities. Pincus conducted all of its legal work outside of Texas, and while MJC's physical location was in Texas, it remotely generated work in other states.[6] The fact that Pincus visited Texas on a few occasions and sent payments to Texas is not dispositive. *See Hydrokinetics, Inc v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983) (finding no specific jurisdiction even where payment was

---

[6]The record shows that MJC marketed to states other than Texas: it received approval to begin marketing to a mortgage firm in Pennsylvania, Florida, and New Jersey; and it marketed to a firm in New York. Further, MJC lists two Texas firms to which it marketed Pincus.

directed to Texas and the defendant traveled to Texas).

The presence of a choice-of-law clause[7] is not sufficient of itself to establish personal jurisdiction; instead, it is but one of many factors to be considered. *Burger King*, 471 U.S. at 481-82; *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 223 (5th Cir. 2012). Despite the weight accorded choice-of-law clauses, MJC has not presented enough contacts outside of the choice-of-law clause between Pincus and the forum state to make a prima facie showing of sufficient minimum contacts.[8]

In the end, no single factor discussed in the court's analysis is dispositive of the personal jurisdiction question. Rather, "all the factors are assessed in tandem in an attempt to resolve the sometimes difficult question whether the defendant's contacts with the forum are purposeful and are such that the defendant 'should reasonably anticipate being haled into court' there, or whether the contacts are 'random,' 'fortuitous,' or 'attenuated.'" *SpinSci Techs., LLC v. J Projects, LLC*, 2018 WL 4281554, at *8 (N.D. Tex. Sept. 7, 2018) (Fitzwater, J.) (citing *Burger King*, 471 U.S. at 474-75).

The foreseeability that MJC would perform part of its obligations under the

---

[7]MJC maintains that the parties agreed on Texas as the venue before signing the Agreement. It relies on extrinsic evidence (emails between the parties sent before the contract was finalized). In Texas, where the language of the contract is unambiguous, the court cannot rely on extrinsic evidence. *See Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010) (stating that "[c]ourts interpreting unambiguous contracts are confined to the four corners of the document, and cannot look to extrinsic evidence to create an ambiguity.") (citation omitted). The language in the Agreement unambiguously sets out a choice-of-law selection, but not a forum selection clause.

[8]MJC requested via email that the choice of law be Texas, and Pincus acquiesced to the request.

Agreement in Texas is not enough for a finding of specific jurisdiction over Pincus.  The

Agreement was executed in New York, did not expressly require performance in Texas,

Texas was neither the sole place of performance nor the hub of the parties' activities, and

Pincus did not actively engage in the activities taking place in Texas.

MJC has failed to make a prima facie showing of the minimum contracts necessary

for the court to exercise specific jurisdiction.

C

Because MJC has failed to make a prima facie showing of minimum contacts, the

court need not reach the fair play and substantial justice prong of the personal jurisdiction

analysis.  Similarly, because the court lacks personal jurisdiction, there is no need to

decide whether this case should be transferred to the Eastern District of New York under

28 U.S.C. § 1404(a).

\*    \*    \*

The court grants Pincus' August 3, 2023 motion to dismiss and dismisses this

action without prejudice for lack of personal jurisdiction by judgment filed today.

**SO ORDERED**.

October 20, 2023.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE